FILED

DEC 1 1 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| ABDU S. HASSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CV 08-742-PK |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social | ) | OPINION AND ORDER |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

PAPAK, Mag. J.,

Plaintiff Abdu Hassen challenges the Commissioner's decision denying his applications for

disability insurance benefits and supplemental security income payments under Titles II and XVI of

the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). The parties consent

to the jurisdiction of the Magistrate Judge to enter a final order and judgment in accordance with

F.R.C.P. 73 and 28 U.S.C. § 636(c). I affirm the Commissioner's decision.

Hassen alleged disability beginning July 24, 2000, the date he stopped working at a wrecking yard due to a back injury. Admin. R. 116. He began working again in 2004 as a medical transport driver on a part time basis. *Id.* at 917-18. He alleges he cannot sustain full time work due to back pain resulting from work injuries and a herniated disc, upper arm and shoulder pain, posttraumatic stress disorder ("PTSD"), and depression. *Id.* at 116.

The administrative law judge ("ALJ") applied the disability determination process required by 20 C.F.R. § 404.1520 and § 416.920. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ found Hassen's ability to work was limited by chronic lumbar strain, type II diabetes mellitus, borderline intellectual functioning, adjustment disorder with depression, PTSD, passive and avoidant personality disorder, and past drug and alcohol use. Admin. R. 759. He found Hassen retained the residual functional capacity ("RFC") to perform work at the light level of exertion, with no more than occasional stooping, bending, crawling, or contact with coworkers or the general public. He found Hassen could perform work involving only simple 1-2-3 step instructions. *Id.* at 761. The ALJ concluded that Hassen could not perform his past work but retained the ability to perform work in other occupations such as small products assembler, packing inspector, and marker. *Id.* at 765-66.

The court reviews the Commissioner's decision to ensure that proper legal standards were applied and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Hassen contends the ALJ failed to properly evaluate all the evidence of his impairments, consider the medical evidence as a whole, and comply with the remand order of the Appeals Council.

## I.    Medical Source Statements

Hassen contends the ALJ did not properly consider the opinions of Brenda O'Dell, Psy.D.,

Valerie Krause, M.D., Ray Tatyrek, Ph.D., Shelley Lowenstein, M.D., Thomas Thrall, M.D., Jennifer

Lawlor, M.D., Julia Perkins, Ph.D., and Jeffrey Swanson, M.D.  I address these opinions in

chronological order based on the time each provided medical services to Hassen.

Dr. Thrall treated Hassen between November 11, 1999, and January 5, 2000, for back pain

related to his work removing tires from vehicles in a wrecking yard.  His symptoms included

stiffness and soreness in the back, radiating down the right leg.  Admin. R. 227-28.  Hassen's

symptoms abated and soon he could ambulate and toe walk normally with only a little trouble heel

walking on the right.  Dr. Thrall diagnosed a lumbar strain with evidence of mild radiculopathy on

the right.  *Id.* at 222, 224.

On December 27, 1999, Steven Schilperoort, M.D., performed an independent medical

evaluation and found Hassen's lumbar strain had resolved without permanent residual impairment

of function.  In addition, Dr. Schilperoort found that Hassen gave "clearly less than reasonable

effort" based on invalid testing, volitional give-way weakness, non-organic pain signs, and a

presentation that was "not the slightest bit typical of this type of an injury episode."  *Id.* at 342-48.

On January 3, 2000, MRI images of the lumbar region of the spine showed degenerative

changes and a small left-sided disc herniation without nerve root compression.  *Id.* at 353-54.

On January 5, 2000, Dr. Thrall saw Hassen for the last time, noted his continued lack of

improvement and referred him to Dr. Lawlor, a rehabilitation physician.  *Id.* at 218.  Dr. Thrall wrote

to a workers compensation claims adjuster on January 26, 2000, indicating he did not concur

completely with Dr. Schilperoort's independent evaluation.  Dr. Thrall noted Hassen's presentation

had been appropriate during examinations, without the non-organic pain behaviors Dr. Schilperoort described. Dr. Thrall opined Hassen had suffered a significant injury on the job, but deferred to Dr. Lawlor for an opinion regarding any long term effects. *Id.* at 216-17.

The ALJ did not discuss Dr. Thrall's statements. ALJs are not required to discuss all the evidence presented. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir.1984). "Rather, [ALJs] must explain why significant probative evidence has been rejected." *Id.* Dr. Thrall's treatment notes and letter were neither significant nor probative in this case. Dr. Thrall's treatment ended before Hassen's disability commenced and he offered no opinion regarding the long term effects of Hassen's work injury. Contemporaneous medical findings did not support ongoing impairment. Dr. Schilperoort found Hassen's lumbar strain resolved by December 1999. The MRI images did not support Dr. Thrall's radiculopathy diagnosis because there was no evidence of nerve root compression and only a small left-sided disc herniation while Hassen claimed only right-sided symptoms. Subsequent electrodiagnostic testing ordered by Dr. Lawlor failed to show evidence of lumbosacral radiculopathy. Admin. R. 315. This contemporaneous evidence shows that any impairment that existed while Dr. Thrall treated Hassen resolved before the alleged onset of disability in July 2000. Accordingly, Dr. Thrall's treatment notes and letter were not significant probative evidence of Hassen's functional capacity during the time that is relevant for his claim. It was not necessary for the ALJ to reject that evidence to reach his decision.

Dr. Lawlor began treating Hassen in January 2000. *Id.* at 320-24. She obtained normal results on electrodiagnostic testing. *Id.* at 315. She reported that Hassen made slow progress with his rehabilitation until June 2000 when he reported another work injury. She noted Hassen was angry and frustrated with his employer and did not want to continue working there. *Id.* at 301. Later

Dr. Lawlor noted that Hassen was not taking an active interest in his recovery. *Id.* at 296. He was taking inappropriate bedrest against her advice. *Id.* at 293. Hassen's continuing symptoms and deconditioning surprised her and she felt his recovery was taking longer than typical for his type of injury. *Id.* at 296. In August 2000, Dr. Lawlor indicated she found no objective evidence of a new injury, but noted a dramatic change in Hassen's attitude about work. She explained that his anger and frustration at his employer interfered with his treatment and prolonged his recovery. *Id.* at 291. On physical examination, Hassen demonstrated significant pain behavior including exaggerated postures, inconsistent difficulty rising from a chair, sighing, groaning, exceedingly slow movements, and give-way weakness. *Id.* at 266.

Dr. Lawlor did a final examination in October 2000. She noted Hassen had failed to follow recommended treatments, including a comprehensive pain program, although he continued to claim constant severe pain. *Id.* at 257. He continued to demonstrate give-way weakness throughout his upper and lower extremities. He demonstrated range-of-motion restrictions which were inconsistent with his movements when not being examined. He also had extreme pain behavior that was inconsistent with his informal movements. *Id.* at 258.

On October 25, 2000, Dr. Lawlor was shown a surveillance videotape of Hassen when he did not know he was being observed. Based on the activities depicted, Dr. Lawlor opined that Hassen's pain behavior during examinations had been voluntary and did not result from organic pain or a psychological pain disorder. *Id.* at 251. She opined that Hassen had lied to her about his symptoms and activities since June 2000. She further opined that Hassen had been medically stationary since June 2000 and there was no objective evidence that he had permanent impairment. *Id.* at 252.

The ALJ's failure to discuss Dr. Lawlor's opinion was not harmful error. Dr. Lawlor's opinion was not probative of any long term functional impairment and the ALJ need not have rejected it to reach his decision. Accordingly, the ALJ was not required to discuss it. *Vincent*, 739 F.2d at 1394-95. Dr. Lawlor's opinion cannot be interpreted in any way that would benefit Hassen. Instead, it demonstrates Hassen's willingness and ability to mislead treatment sources for his own purposes. The ALJ's failure to discuss evidence of malingering was nonprejudicial and, thus, harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054-55 (9th Cir. 2006).

Dr. Lawlor referred Hassen for a disability prevention evaluation in August 2000. Dr. Lowenstein provided the medical consultation and Dr. Tatyrek provided the psychological consultation. On physical examination, Dr. Lowenstein obtained generally normal findings except that Hassen's lumbar range of motion was decreased by pain and he had mild sensory loss in the middle toes of the left foot. There was no evidence of muscle weakness or atrophy and no loss of reflexes. Admin. R. 272-74. Hassen told Dr. Tatyrek he had been involved in combat in Eritrea, his country of origin, during the 1980s. He began experiencing intrusive nightmares about past traumatic events and severely limited his activities. Hassen described contentious and confrontational relationships at his job. Dr. Tatyrek noted Hassen had taken a very passive approach to rehabilitation and had failed to follow treatment recommendations. *Id.* at 277-79. Dr. Tatyrek observed that Hassen sat without pain for 75 minutes, communicated adequately, and demonstrated no cognitive deficits, although formal testing was not done. *Id.* at 279.

The evaluation also included a physical capacities assessment which showed Hassen was capable of full time work in the sedentary to light range of physical demands. The evaluator opined that this might be a low estimate of his ability because Hassen's excessive and inconsistent pain

behaviors suggested he was self limiting his efforts. Direct observation and standard reliability measures indicated the evaluation results were inconsistent and a questionable representation of his capabilities. *Id.* at 284, 287.

The evaluation team recommended a comprehensive multi-disciplinary pain management program including physical rehabilitation, medication management, vocational rehabilitation, and a psychological approach to self management. *Id.* at 264, 274, 279. Dr. Lawlor reported in October 2000 that Hassen did not proceed with the recommended comprehensive pain program, although he continued to complain of severe constant pain. *Id.* at 257. There is no indication that Hassen saw Drs. Lowenstein or Tatyrek again or participated in the type of program they recommended. The reports of Drs. Lowenstein and Tatyrek are not probative of any functional limitations in excess of those found by the ALJ and it was not necessary for him to reject their opinions to reach his decision. Accordingly, the ALJ was not required to discuss their reports and his failure to do so, if erroneous, was harmless. *Vincent*, 739 F.2d at 1394-95; *Stout*, 454 F.3d at 1054-55.

Dr. Swanson saw Hassen several times between February 2001 and October 2002, primarily for medication management. Admin. R. 409, 411-12, 417-18. In October 2001, Hassen reported a positive skin test for tuberculosis. *Id.* at 420. Later records indicate he failed to comply with prescribed treatment for that condition. *Id.* at 411, 419. On December 27, 2001, Dr. Swanson signed a housing form indicating Hassen was disabled. His progress notes indicate he signed the form "to allow [Hassen] to get low cost housing" from the Clackamas County Housing Authority. *Id.* at 419, 424. In June 2002, Hassen reportedly used opiate pain medications inappropriately and Dr. Swanson reduced his prescription. *Id.* at 411.

Although it is unclear from Hassen's briefs, I assume he contends the ALJ erred by ignoring the housing form Dr. Swanson signed on December 27, 2001. To the extent the housing form represents Dr. Swanson's medical opinion, the record supports grounds for discounting it, including the absence of a medical basis or any clinical findings showing impairment. However, the court is constrained to review only the reasons asserted by the ALJ. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Here, the ALJ offered no explanation.

I am satisfied this omission was harmless error. Even if the housing form were credited as a medical opinion, it would not establish long term impairments sufficient to meet the duration requirement of the Social Security Act. Dr. Swanson's notes clearly indicate he endorsed only "short-term disability." *Id.* at 419. The housing form and Dr. Swanson's notes as a whole offer no clue as to the nature of Hassen's impairment, when it began or when Dr. Swanson expected the short-term condition to abate. In context with the record as a whole, the housing form was not significant evidence of Hassen's ongoing functional capabilities. I conclude, therefore, that the ALJ's omission was harmless error. *Stout*, 454 F.3d at 1054-55.

On November 14, 2001, Hassen initiated treatment from Clackamas County Mental Health services ("CCMH"). Brenda O'Dell, M.A., a mental health specialist at CCMH, performed the intake assessment. Admin. R. 551-61, 599. Hassen reported his history of combat during the 1980s in East Africa. Symptoms of depression and intrusive thoughts and nightmares about the war began when he reportedly injured his back at work in June or July of 2000. Based on Hassen's reported symptoms, Ms. O'Dell opined "it appears that Mr. Hassen suffers from debilitating depression and severe symptoms related to PTSD." *Id.* at 550. She then saw Hassen in individual counseling sessions over several months ending on April 19, 2002. *Id.* at 463, 465, 466, 468, 469, 563, 585,

589, 590, 594, 597, 598. During the course of this counseling relationship, she began identifying herself in correspondence as "Brenda D. O'Dell, Psy.D." *Id.* at 601.

On December 18, 2001, Dr. O'Dell wrote a letter on Hassen's behalf indicating that Hassen was being treated for symptoms related to major depression, PTSD, and psychosocial stressors of homelessness and lack of a stable income. *Id.* at 601. Her progress notes from counseling sessions reflect that she engaged in problem solving discussions with Hassen to help him overcome homelessness and financial difficulties, assisted him in preparing paperwork for vocational rehabilitation services, and arranged respite housing. *Id.* at 589, 590.

On January 16, 2002, Dr. O'Dell signed a verification of disability form to assist Hassen to obtain housing. She certified that Hassen had a physical, mental, or emotional impairment expected to be of long term duration which substantially impeded his ability to live independently and which was of a nature that could be improved if Hassen were provided with better housing conditions. *Id.* at 600. She did not indicate the nature of Hassen's impairment or identify the clinical basis for this statement; she simply placed a check mark in the appropriate place to indicate disability. *Id.*

On February 7, 2002, Dr. O'Dell prepared a mental residual functional capacity worksheet rating Hassen's abilities in 20 work-related activities. She indicated Hassen was not significantly limited in the ability to remember procedures, work with simple instructions, or interact with the public and coworkers. She found moderate impairment in the ability to work with detailed instructions, maintain attention and concentration, perform within a schedule, sustain an ordinary routine, and respond appropriately to criticism from supervisors. Dr. O'Dell indicated marked impairment in the ability to complete a normal work schedule and the ability to set realistic goals independently. *Id.* at 488-89. At the same time, Dr. O'Dell completed a psychiatric review

technique form indicating that Hassen had marked impairment in all four of the broad areas of function used to assess mental impairments in the Listing of Impairments, *viz.* activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation. *Id.* at 490-91.

The ALJ discounted Dr. O'Dell's assessment of Hassen's limitations. *Id.* at 762. An ALJ can reject the opinion of a treating physician for clear and convincing reasons. *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

Hassen argues the ALJ improperly found Dr. O'Dell was not an acceptable medical source as defined in 20 C.F.R. § 404.1513 and Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939. As a result, Hassen argues, the ALJ applied the wrong standard in evaluating Dr. O'Dell's statements. This argument is not persuasive because the ALJ made no finding as to whether Dr. O'Dell was an acceptable medical source, did not discount her assessment of Hassen's limitations on that basis, and provided other compelling reasons for discounting her assessment.

The ALJ accurately observed that Dr. O'Dell was a masters level psychologist when Hassen initially sought treatment in November 2001 and began identifying herself as a doctorate psychologist in December 2001. *Id.* at 601, 762. The ALJ also observed accurately that Dr. O'Dell's treatment relationship with Hassen was that of counselor. Dr. O'Dell's only contact with Hassen outside of a dozen individual counseling sessions was her intake interview. She did not conduct a comprehensive psychodiagnostic evaluation or administer standard diagnostic tests, for example. The ALJ's acknowledgment of these factual circumstances does not mean he considered her an unacceptable medical source or evaluated her assessments under a lesser standard.

The ALJ found Dr. O'Dell's assessments were not supported by objective findings. *Id.* at

762. Hassen did not identify an objective or clinical basis for Dr. O'Dell's findings of marked

impairment in all the broad categories of function. Dr. O'Dell did not point to any evidence

suggesting a single episode of decompensation, for example, although she opined he had experienced

four or more. Her assessments were conclusory in form, appearing on check-the-box worksheets.

An ALJ can properly discount a treating physician's opinion that is conclusory in form and

unsupported by medical findings and the record as a whole. *Meanal v. Apfel*, 172 F.3d 1111, 1117

(9th Cir. 1999); *Batson v. Comm'r of Soc Sec Admin*, 359 F.3d 1190, 1195 (9th Cir. 2004).

The ALJ found Dr. O'Dell relied heavily on Hassen's subjective statements about his

symptoms and resulting limitations. Admin. R. 762. This conclusion is reasonable and logically

flows from the absence of objective and clinical findings, the nature of their counseling relationship,

and the substance of her progress notes. The ALJ determined Hassen's subjective statements were

not credible. *Id.* at 763. Hassen does not challenge the ALJ's credibility determination and it is

amply supported by abundant evidence. An ALJ can properly reject a physician's disability opinion

that is premised on the claimant's own subjective complaint of disabling symptoms which the ALJ

properly discounted. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *Tonapetyan v. Halter*, 242

F.3d 1144, 1149 (9th Cir. 2001). Under such circumstances, the medical source's opinion is no more

credible than the statements upon which it was based.

The ALJ found Dr. O'Dell's disability assessment was based as much on Hassen's

homelessness and lack of stable income as it was on his mental condition. Admin. R. 762. This

conclusion is supported by Dr. O'Dell's progress notes, which reflect problem-solving discussions

about obtaining housing, overcoming financial difficulties, and maintaining sobriety. *Id.* at 589, 590,

11 - OPINION AND ORDER

594, 598. It is also supported by Hassen's improved mental health after obtaining housing. *Id.* at 467, 469. It is born out by evidence that Hassen's symptoms improved dramatically when he obtained stable income as a medical transport driver. *Id.* at 803. While life stressors such as homelessness and lack of income undeniably pose significant impediments to employment, they cannot form the basis for a claim of disability under the Social Security Act.

The ALJ's reasoning for discounting Dr. O'Dell's opinion is clear and convincing and supported by inferences reasonably drawn from the record as a whole. Under such circumstances, the determination must be upheld. *Thomas*, 278 F.3d at 956-57; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Hassen asserts the ALJ improperly considered or ignored the medical opinion of Dr. Perkins. Pl.'s Br. 29. Hassen does not state the substance of the opinion, the objectionable reasoning of the ALJ, the bases of his objections, or any argument beyond the bare assertion of error. The court need not address issues a plaintiff fails to argue with specificity. *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). Nonetheless I will attempt to address this contention briefly without counsel's assistance.

On February 20, 2002, Dr. Perkins performed a psychological evaluation including a clinical interview with mental status examination and intelligence and personality tests. Admin. R. 383-90. Hassen scored in the borderline range of intellectual function and had an invalid profile on personality tests. *Id.* at 387. Dr. Perkins diagnosed adjustment disorder with extreme depression, anxiety, and anger, primarily due to his then-current circumstances, which included homelessness and unemployment. *Id.* at 388. Hassen felt he could not work due to his physical condition, difficulty concentrating, depression, and, as a Muslim, because employers were unwilling to hire

him. *Id.* at 389. Dr. Perkins agreed that Hassen was unemployable based on those problems as well as low borderline intelligence, educational deprivation, poor verbal skills, lack of job skills, and suspected proneness to use drugs and alcohol when under stress. *Id.*

The ALJ accepted Dr. Perkins's diagnostic impression and included the mental impairments she found among Hassen's severe impairments. *Id.* at 759, 760. The ALJ did not discuss Dr. Perkins's opinion that she viewed Hassen as unemployable. That part of Dr. Perkins's opinion was not probative of disability as defined by the Social Security Act, because Dr. Perkins based her opinion about Hassen's employability on factors other than and in addition to his mental and physical impairments. It is clear from the ALJ's decision that he considered Dr. Perkins's findings regarding the limitations attributable to Hassen's mental impairments. Accordingly, the ALJ considered and discussed the significant and probative portions of Dr. Perkins's opinion.

Dr. Krause is a family practice physician at the Clackamas County Public Health Division who first saw Hassen on November 6, 2001, for complaints of back pain, anxiety due to financial insecurity, and depression. Admin. R. 451. She next saw Hassen after a slip and fall accident in January 2003. Dr. Krause diagnosed a cervical strain and head contusion which she followed in a series of monthly appointments. *Id.* at 450, 452, 617-19. Hassen responded well to the medication regimen Dr. Krause prescribed. He reported he was working on his GED and looking for employment that did not require physical labor. *Id.* at 616. In May 2003, Hassen reported his pain was well controlled by medications. Dr. Krause observed he was able to move fairly comfortably, although not rapidly. His mood was fair and his range of affect was improved. *Id.* at 613.

On January 12, 2004, Dr. Krause wrote an opinion letter regarding Hassen's functional limitations. *Id.* at 653. Dr. Krause said Hassen suffered from chronic pain of the lumbar region of

the spine due to an ongoing muscular strain, chronic pain in the leg from an old gunshot wound, chronic tension headache, major depression, PTSD, and diabetes mellitus. She opined Hassen remained quite limited in his physical capacities due to pain and required frequent changes in position. He occasionally needed to lie on the floor due to muscle spasms. Dr. Krause indicated Hassen was unable to engage in any physical activity. She opined Hassen had limited ability to focus and concentrate, unpredictable mood lability, and limited ability to interact with others or tolerate moderate levels of stress. Dr. Krause opined it was highly unlikely Hassen would be able to find or sustain competitive employment. *Id.* at 653.

The ALJ discounted Dr. Krause's opinion because the functional limitations she proposed were ambiguous and unsubstantiated. *Id.* at 762. Dr. Krause did not indicate the frequency with which Hassen would need to change positions, for example, or address his ability to engage in work activities that did not involve physical exertion. She did not substantiate her opinion with clinical or objective medical findings. Her opinion is inconsistent with her own notes regarding Hassen's report that his pain was well controlled by medications and with her own observation that Hassen was able to move fairly comfortably. The ALJ found that Dr. Krause relied on Hassen's subjective statement of his functional limitations which the ALJ found unreliable. *Id.* That inference reasonably flows from the absence of objective findings or clinical observations to support her opinion. A physician's opinion is no more credible than the statements upon which it is based. *Fair,* 885 F.2d at 605; *Tonapetyan,* 242 F.3d at 1149. Finally, the ALJ reasonably accommodated the limitations in Dr. Krause's opinion by significantly limiting exertional demands, contact with others, and cognitive requirements in his RFC assessment. *Id.* at 761, 762. To the extent Dr. Krause found limitations in excess of those in the RFC assessment, the ALJ gave clear and convincing reasons for

discounting her opinion.  His determination must be upheld.  *Thomas*, 278 F.3d at 956-57; *Andrews*,

53 F.3d at 1039.

## II.    **Lay Witness Statements**

Hassen argues the ALJ failed to provide adequate reasoning to reject written statements of

lay witnesses and the testimony of Sherry Mackey, a care coordinator at CCMH.  With respect to the

written statements, Hassen failed to identify specific witnesses, cite the location of their statements

in the record, describe the substance of the statements, or provide cogent reasoning to show the

statements were significant probative evidence of his functional limitations.    Under these

circumstances, I am unable to address Hassen's assertion of error regarding the written statements.

*Carmickle*, 533 F.3d at 1161 n.2 .

In September 2003, Mackey became Hassen's care coordinator at Clackamas County Public

Health services.    Admin. R. 632.    In that role, she did not provide therapy or medication

management, but assisted him to access those and other public services.  *Id.* at 57-58.  In October

2003, for example, Mackey met with Hassen and arranged for vocational rehabilitation services to

pay for him to retake a GED writing test.  *Id.* at 649.   In February 2004, Hassen called for assistance

when he received a shut off notice from PGE.  *Id.* at 690-91.  In March 2004, Mackey assisted him

in preparing documents for his application for naturalization and a related fee waiver.  *Id.* at 687,

689.

Mackey testified at the hearing in January 2004, that in her interactions with Hassen, she

observed that he became frustrated and required assistance with problem-solving processes.  *Id.* at

59.  She believed he could follow simple operations and instructions, but would become frustrated

and overwhelmed with a long series of tasks.  *Id.* at 59-60.  When frustrated and overwhelmed, his

thinking would deteriorate and he would need to be redirected to stay on task. *Id.* at 61-62. With help staying on task from a job coach in a sheltered workshop, Mackey believed Hassen could work for a couple of hours at a time. *Id.* at 61.

The ALJ did not expressly address Mackey's testimony. However, Hassen does not identify additional functional limitations in work-related activities supported by Mackey's testimony which the ALJ should have included in the RFC assessment. The RFC assessment restricted Hassen's occupational base to jobs involving "only simple 1-2-3 step instructions." *Id.* at 761. This reasonably precludes the overwhelming situations in which, according to Mackey, Hassen becomes frustrated and loses the ability to focus on tasks. Accordingly, even if Mackey's testimony were credited, it would not establish functional limitations in excess of those in the RFC assessment. I conclude the ALJ's failure to address Mackey's testimony, if erroneous, was harmless.

### III.    **Compliance With Remand Order**

The ALJ issued his initial decision adverse to Hassen in March 2004. *Id.* at 14-32. The parties stipulated that further proceedings were required to reevaluate the medical evidence as a whole, in particular the opinions of Drs. O'Dell and Krause. Based on that stipulation, this court reversed the decision and remanded for the Commissioner to perform those tasks and conduct other further proceedings as necessary to properly complete a new decision-making process. *Id.* at 771-72.

Hassen's challenges to the ALJ's evaluation in his second decision of the opinion of Dr. O'Dell, the opinion of Dr. Krause, and the medical evidence as a whole, are not meritorious for reasons discussed previously in this opinion. Accordingly, I conclude the ALJ reasonably complied with the remand order of this court.

Hassen argues separately that the ALJ's second decision did not satisfy the instructions in the remand order of the Appeals Council. The district court has jurisdiction to review only the final decision of the Social Security Administration. *See* 42 U.S.C. § 405(g). The Appeals Council denied review of the ALJ's second decision, making the ALJ's second decision, and not the remand order of the Appeals Council, the final agency decision for review in this court. Admin. R. 698-700.

*Ramirez v. Shalala*, 8 F.3d 1449, 1451 (9th Cir. 1993). In doing so, the Appeals Council declined to find that the ALJ had failed to comply with its remand instructions. Under these circumstances, I decline to evaluate whether the ALJ's second decision satisfied the demands of the Appeals Council's remand. *Tyler v. Astrue*, 305 Fed. Appx. 331 (9th Cir. 2008).

For the foregoing reasons, the ALJ's decision is based on correct legal standards and supported by substantial evidence. The Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 11th day of December, 2009.

Paul Papak
United States Magistrate Judge

17 - OPINION AND ORDER